1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            GALVESTON DIVISION

4    USA                           §    CASE NO. 3:23-cr-00029-40
                                    §    GALVESTON, TX
5    VERSUS                         §    THURSDAY,
                                    §    MARCH 28, 2024
6    JOSE ANGEL GONZALEZ, SR.       §    2:53 PM TO 3:32 PM

7                            DETENTION HEARING

8                   BEFORE THE HONORABLE ANDREW EDISON
                       UNITED STATES MAGISTRATE JUDGE
9
                               APPEARANCES:
10

11        FOR THE PARTIES:                SEE NEXT PAGE

12        ELECTRONIC RECORDING OFFICER: REBECCA BECKNAL

13        COURT CLERK:                    RUBEN CASTRO

14

15

16

17

18

19

20

21                      TRANSCRIPTION SERVICE BY:

22                      Veritext Legal Solutions
                      330 Old Country Road, Suite 300
23                          Mineola, NY 11501
                      Tel: 800-727-6396 ▼ www.veritext.com
24

25   Proceedings recorded by electronic sound recording; transcript
                     produced by transcription service.

```
 1                        APPEARANCES:

 2   FOR THE PLAINTIFF:           OFFICE OF U.S. ATTORNEY
                                  Kenneth A. Cusick
 3                                601 25th Street
                                  Room 227
 4                                Galveston, TX 77550
                                  713-567-9000
 5
     FOR THE DEFENDANTS:          FEDERAL PUBLIC DEFENDER
 6                                Heather M. Hughes
                                  440 Louisiana Street
 7                                Suite 1350
                                  Houston, TX 77002
 8                                713-718-4600

 9   ALSO APPEARING:             SABRINA DELGADO

10                               JAMES EMMERSON

11                               JOSE ANGEL GONZALES, JR.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  GALVESTON, TEXAS; THURSDAY, MARCH 28, 2024; 2:53 PM

2          THE COURT:  Okay.  Let me next call Case 3:23-cr-29-

3  40, United States versus Jose Angel Gonzalez, Sr.  Who do we

4  have for the government?

5          MR. CUSICK:  Kenneth Cusick, Your Honor.

6          THE COURT:  For the Defendant?

7          MS. HUGHES:  Heather Hughes here for Mr. Gonzalez,

8  Your Honor.

9          THE COURT:  Well, Ms. Hughes, good to see you.

10         MS. HUGHES:  Good to see you.

11         THE COURT:  Okay.  Mr. Gonzalez, can you hear me,

12  sir?

13         MR. GONZALEZ, SR.:  Yes.  Yes, ma'am.  Yes, sir.

14         THE COURT:  Okay.  Are we ready to proceed with the

15  detention hearing?

16         MS. HUGHES:  Yes, Your Honor.

17         MR. CUSICK:  Yes, Your Honor.

18         THE COURT:  Okay.  You all know what I like to do.

19  We'll start with the proffer from the government.  Mr. Cusick,

20  who's the witness going to be, sir?

21         MR. CUSICK:  Your Honor, the witness available that

22  I'll do the proffer for is DEA Task Force Officer James

23  Emmerson, who's one of the co-case agents in this case.

24         THE COURT:  Okay, if you would -- Mr. Emmerson,

25  obviously, please listen closely after Mr. Cusick's proffer.  I

1    will swear you in and then ask is your testimony under oath?

2    And if it is, let me know.  If any changes need to be made to

3    ensure that the proffer is proved correct and accurate in all

4    respects, please do so.  With that said, I'll turn it over to

5    you, Mr. Cusick, for the proffer.

6        MR. CUSICK:  Your Honor, one additional item before I

7    begin the proffer, and this will work for the remaining

8    detention hearings that are scheduled before the court in this

9    case.  Any references to Title III intercepts of telephone

10   calls were court-authorized, but I have -- in discovery, I'll

11   get a disclosure order before Judge Brown, but for purposes of

12   these preliminary matters, the government would move to add the

13   Court grant permission that I can refer to and talk about

14   intercepted calls on these court-authorized wiretaps.

15       THE COURT:  The Court grants permission, not only in

16   this case here today, but all further detention hearings in

17   connection with this overall case.

18       MR. CUSICK:  Thank you, Your Honor.

19       THE COURT:  Before you go forward, Mr. Cusick, I'm

20   going to enter into the evidence the pretrial report as Exhibit

21   1.  Exhibit 1 for this detention hearing will be Mr. Gonzalez's

22   pretrial report, which I have with you.  Now, I'll let you

23   proceed.  Sorry, sir.

24       (Exhibit 1 entered into evidence)

25       MR. CUSICK:  Your Honor, I would point out in the

1 report that on Page 1 that the initial appearance was before

2 Your Honor yesterday and not before Magistrate Judge Dena

3 Palermo, as it says --

4 THE COURT: A lot of people confuse Judge Palermo and

5 myself. We look very similar. So I understand.

6 MR. CUSICK: Yes, Your Honor. Your Honor, Officer

7 Emmerson would testify that he's been in law enforcement --

8 he's worked for approximately 18 years. He's been with the

9 Galveston Police Department and has been a task force officer

10 with the DEA for the past 12 years. He is one of the co-case

11 agents in this case, which the investigation began for it in

12 2018 and continued through 2020.

13 He also would testify that not only did he

14 investigate the case but that he prepared reports and

15 everything that was presented to the US Attorney's Office for

16 presentment of an indictment. And that he's well acquainted

17 with the facts of the case, including certain wiretap or

18 telephone calls that were intercepted through the investigation

19 through court-authorized wiretaps.

20 In this particular case, Mr. Jose Angel Gonzalez,

21 Sr., he's alleged to have participated in the overall drug

22 conspiracy alleged in Count 1 and also in a possession with

23 intent to distribute 1 kilogram of cocaine in Count 50.

24 The activity, the officer would testify that the

25 activities of Mr. Gonzalez as far as this investigation are

1  concerned, the period of time that his involvement was from the

2  perception of the investigation, was around the time of March

3  and April 2020.  And as far as Count 50 goes, that on April the

4  22nd, 2020 that Mr. Gonzalez and Mr. Jose Maximiliano Herrera,

5  both bought half kilogram each, for a 1-kilogram total, of

6  cocaine from Christian Mateo Vaca.  And that upon delivery of

7  the half kilogram of cocaine to Mr. Gonzalez, Sr., which

8  occurred at his residence in Houston, that he was then -- Mr.

9  Vaca was then paid for the cocaine.

10  Officer Emmerson would also testify that previous to

11  April the 22nd, 2020, approximately three -- couple of weeks

12  before that, that as part of the conspiracy, that Mr. Gonzalez,

13  Sr. purchased nine ounces of cocaine again from Christian Mateo

14  Vaca in Houston, Texas, and then sold it.

15  So in total, the nine ounces plus a half kilogram of

16  cocaine would be the extent of activity that was observed

17  during the investigation of this case and as far as relevant

18  conduct and the allegations in this indictment.

19  In Count 50, conversations occurred between Mr.

20  Gonzalez, Sr., and Mr. Christian Mateo Vaca that were recorded

21  over the wiretap or the intercepted telephone calls.  In

22  addition to these calls, there was physical surveillance by the

23  officers in support of the wiretap.  And they'd be available to

24  testify as witnesses.

25  Concerning Mr. Gonzalez, Sr.'s danger to the

1    community and risk of flight it would be the opinion of Task

2    Force Officer Emmerson that Mr. Gonzalez, Sr. is a danger to

3    the community and also would be a risk of flight.  The basis

4    for dangerousness of the community is based upon the

5    presumption -- the facts as Officer Emmerson knows it from the

6    investigation -- the presumption in the statute, since this is

7    a minimum mandatory, potential maximum punishments for the

8    allegations.  But that there are also there's, in the midst of

9    the criminal history that Mr. Gonzalez, Sr. has, there have

10   been several incidents that involve firearms.  He's been

11   charged with felon possession of firearm offenses.  And more

12   recently, in 2020, regarding the Pasadena, Texas, allegations

13   by that police department, which I believe were ultimately

14   dismissed, there were two firearms seized or found on June

15   25th, 2020.  I believe a pistol and assault rifle, as well as

16   approximately a kilogram of cocaine.

17           More recently, like this Tuesday, March 26th, the day

18   Mr. Gonzalez, Sr. was arrested, there were two firearms found

19   in his residence, two pistols.  One was under a shirt on a

20   table next to where he was.  So it was certainly within

21   reasonable distance of him accessing it.

22           So the government's concern with the nature of the--

23   at least the officer's opinion is based on dangerousness of

24   drug trafficking and distribution activities, the criminal

25   history and also a history of Mr. Gonzalez, Sr. with firearms

1    when he's not supposed to have them.  And so that's why I'm

2    arguing that he is definitely a danger to community if he is

3    released, and he should be detained for that alone.

4            As far as risk of flight, the government believes

5    that -- it appears that he became a US citizen in 2011, but

6    that some of the history, at least in the criminal history,

7    shows a previous deportation in August of 2010.  In candor to

8    the Court, I believe the last information we had from ICE was

9    that there's, you know, no detainer and that he does, in fact,

10   have status.  I'm not clear when it was, the exact date of when

11   he became a US citizen but apparently he has.

12           Nonetheless, the government feels that he has

13   contacts in Mexico and therefore, has the ability if he took

14   flight to seek harbor there and also would have contacts and

15   would not be isolated.  Therefore, the government believes he's

16   both a danger community and a risk of flight based on -- in the

17   opinion of the investigating officer, Task Force Officer

18   Emmerson.  I would pass the witness, Your Honor.

19           THE COURT:  Thank you very much.  Agent Emmerson, do

20   me a favor, sir.  Lift your right hand.  Do you swear the

21   testimony you're going to give in this court proceeding today

22   is the truth, the whole truth, and nothing but the truth so

23   help you, God?

24           AGENT EMMERSON:  Yes, sir, I swear.

25           THE COURT:  Okay.  You heard the proffer that has

1  been made by Mr. Cusick.  Is that proffered testimony heard

2  today under penalties?

3            AGENT EMMERSON:  Yes, sir, it's true and correct.

4            THE COURT:  Okay.  Ms. Hughes, the floor is yours.

5            MS. HUGHES:  Thank you.

6                 CROSS-EXAMINATION OF JAMES EMMERSON

7  BY MS. HUGHES:

8  Q    Agent, just to be clear in terms of this case, you believe

9  that Mr. Gonzalez's conduct took place between March and April

10 of 2020?

11 A    Correct.  Yes, ma'am.

12 Q    Okay.  And the total amount of drugs that he's responsible

13 for is a half kilo and then nine ounces of cocaine?

14 A    Correct.  Yes, ma'am.

15 Q    What's the total amount of drugs in the overall

16 conspiracy?

17 A    It was 550 kilograms of meth; and I believe 250 kilograms

18 of cocaine, maybe 249, 248; 30-something kilograms of heroin;

19 22,000 fentanyl pills; and 5 kilograms of pentobarbital.

20 Q    So fair to say that his conduct doesn't extend to the

21 majority of the drugs involved in this case?

22 A    What do you mean by that?

23 Q    We just spoke about the fact that we're talking about a

24 little bit more than a half kilo in terms of his relevant

25 conduct, right?

1  A    Correct.

2  Q    And the amount of drugs far exceeds that number, right?

3  A    Yes, ma'am.  The amount that I just stated that we seized

4  far exceeds the half kilogram, correct.

5  Q    So his relevant conduct is a small portion of the overall

6  trafficking?

7  A    Based on quantity.  Yes.

8  Q    Okay.  And you mentioned that there were two guns found at

9  the residence.  Where was the second gun found?

10  A    In the master bedroom?

11  Q    And was it in a safe?

12  A    I don't know.  I wasn't there during the execution of the

13  search warrant.

14  Q    Do you have any information to suggest that he is not a

15  citizen of the United States?

16  A    No, ma'am.

17  Q    And in terms of his role, was he a street-level dealer?

18  Was he a middleman?  What was he doing?

19  A    As far as roles, as far as how we assign him at the DEA,

20  he would be a distributor.

21  Q    And who was he distributing to?

22  A    To other clients, other customers.  As far as exact names,

23  I don't know.  We stopped at his point.

24  Q    Okay.  But you're saying that in terms of clients, do you

25  mean people, other drug dealers, other individuals?

1   A    Yes, ma'am.  Based on the quantities, yes.  I mean a half

2   kilogram of cocaine is, you know, by far more than any user

3   would use.

4   Q    And I guess what I'm asking is you think that he's like a

5   street-level dealer?  Is that fair to say?

6   A    Correct.

7            MS. HUGHES:  May I have a moment, Your Honor?

8            THE COURT:  Absolutely.

9            MS. HUGHES:  All right.  I have no further questions

10        for this witness, Your Honor.

11           THE COURT:  Anything further, Mr. Cusick?

12           MR. CUSICK:  No, Your Honor.

13           THE COURT:  Okay.  Any further -- Agent Emmerson, you

14        may step down from the witness stand.

15           THE WITNESS:  Thank you.

16           THE COURT:  Mr. Cusick, continue, sir.

17           MR. CUSICK:  No further witnesses or evidence, Your

18        Honor.

19           THE COURT:  Okay.  Ms. Hughes, any proffer or

20        evidence?

21           MS. HUGHES:  Yes, Your Honor.  I would like to

22        proffer the testimony of Mr. Gonzalez's son.  That's Jose

23        Gonzalez, Jr.  He is here in the courtroom, Your Honor.

24        Mr. Gonzalez, Jr. would tell the Court that he lives in an

25        apartment that he rents, that his father can live with

1    him, that Mr. Gonzalez, Jr. is doing work as an AC

2    technician for Subcool Refrigeration, that there are no

3    guns in his home, that he has a prior deferred

4    adjudication from 2013 for possession of marijuana.  He

5    did complete community supervision.  He has a dismissed

6    misdemeanor DUI case from 2022.  He would also tell the

7    Court that he's aware that his father had a stroke in his

8    sleep about four years ago that slowed him down

9    significantly.

10        The Pretrial Services did verify that information

11   with him.  There's not an updated written report, but they

12   did speak with him here in the courtroom this afternoon,

13   Your Honor.  He would be willing to sign on the bond and

14   to be a third-party custodian for his father.  And that's

15   all the testimony I have, Your Honor.

16        THE COURT:  Okay.  Let's have argument.  Mr. Cusick.

17        MR. CUSICK:  Your Honor, it's the government's

18   position that with the criminal history and the

19   circumstances identified in the Pretrial Services report,

20   the involvement of firearms, not only just the possession

21   but in proximity to other illegal activities such as the

22   allegations in this case, the government strongly feels

23   this Defendant is a danger to the community demonstrated

24   by it's not just something that happened this week or on

25   and during April 2020, but the overall picture with his

1    criminal history and the involvement of firearms and

2    drugs.  As he's facing a minimum mandatory in this case

3    for these charges, it's 10 to life on Count 1, so the

4    government feels that that's an incentive to take flight.

5    He was from Mexico.  Has been back there.  He may be in

6    the United States legally now, but the government feels

7    that there's the potential that he could disappear and it

8    would be a lot harder to get him if he went back to

9    Mexico.  So the government feels he should be detained

10   pending trial in this case.

11        THE COURT:  Okay.  Let me ask you this.  There was

12   testimony that there were two firearms found in his

13   residence when he was arrested on March 26.  Is that

14   something he should not have been in possession of because

15   he's a convicted felon?

16        MR. CUSICK:  Yes, Your Honor.  He was a prohibited

17   person, so he should not have had any firearms.

18        THE COURT:  Okay.  Anything further, Mr. Cusick?

19        MR. CUSICK:  No, Your Honor.

20        THE COURT:  Ms. Hughes.

21        MS. HUGHES:  Yes, Your Honor.  First, I want to start

22   with risk of flight, there's no detainer --

23        THE COURT:  Don't even bother with risk of flight.  I

24   don't think the government has met its burden on risk of

25   flight.

1          MS. HUGHES:  Okay.  Thank you, Your Honor.  Then I
2     will turn to dangerousness in this case.  I would point
3     out that there were guns found in his home but not on his
4     person when he was arrested.  We have no testimony that
5     there was any type of guns on him during any of these drug
6     transactions.  The reality of this situation is that he is
7     a minor player in this case.  At most, he is something
8     akin to a street-level dealer.

9          There's no indication that he exhibited violence of
10    any kind throughout this case. It was a very short period
11    of time.  We're talking about 1 to 2 months at most.  And
12    the case is remote in time, Your Honor.  This happened
13    back in 2020.  It's now 2024.

14         Mr. Gonzalez has family support.  He has a legitimate
15    job where he is working both as an Uber driver and as a
16    carpenter for the Union 551.  He can make money.  He can
17    live with his son who is prepared to be responsible to the
18    Court, as well as financially responsible by signing on
19    the bond for him.

20         And the government hasn't met its burden to show that
21    he is such a danger to the community that he cannot be
22    released under any circumstances.  The Court could impose
23    a GPS monitor, home incarceration, and with that strict
24    level of supervision, if anything should go wrong, it's
25    not going to be long until he's back before this Court,

1    which frankly we don't think is going to be necessary

2    anyways, Your Honor.

3         And so for all those reasons and based on his role

4    and what he's charged with here, we would ask the Court to

5    release him on bond.

6         THE COURT:  How do you address the gun issue?  That's

7    what causes me the concern, in all candor.  He shouldn't

8    have the guns.  He's living with a significant other and

9    her 11-year-old daughter.  He's got two weapons in the

10   house that he certainly shouldn't have.  Why isn't that --

11        MS. HUGHES:  And, Your Honor, we are going to address

12   the gun issue by having him live in a different residence

13   than where he was previously at the time.  Clearly, that

14   was an issue.  There were guns in that home, but we are

15   going to have him live with his son who has verified that

16   he has no guns in the home.

17        Mr. Gonzalez is well aware that as a condition of

18   release, he is not going to be allowed to have a gun and

19   that if he tries to break the rules, his son is going to

20   be responsible for reporting him.

21        THE COURT:  But he knew as a convicted felon, he

22   shouldn't have the guns in the first place.  Right?

23        MS. HUGHES:  Yes, Your Honor, he should have known

24   that.  Obviously under Texas law, the rules are different

25   for when felons can possess a weapon.  That doesn't mean

1        that it was legal under federal law, but that can be a

2        source of confusion for people.  The Court can make very

3        clear to him that he cannot have a weapon.  And again,

4        there's no indication that he ever used a gun in

5        connection with any sort of drug offense.

6        The only gun charge he has is a felon in possession

7        of a firearm.  So again, that is not someone who is using

8        a gun, who is exhibiting it, who is brandishing it, who is

9        furthering any sort of criminal activity.  And so while,

10       yes, he did have a gun and he should not have had one,

11       with the change in residence, with the admonishment from

12       the Court, with the supervision of his adult son, and in

13       view of how the criminal history reflects a lack of

14       violence with guns, there is enough here for the Court to

15       say he is not a danger to the community solely based on

16       the guns being in the home at the time of the arrest.

17            THE COURT:  Okay.  Anything further, Mr. Cusick?

18            MR. CUSICK:  No, Your Honor.  The defense had quite

19       an education with firearms, Your Honor.  In 2004, he was

20       convicted federally.  That was, the indictment was

21       dismissed without prejudice in 2007, but he was charged

22       with possession of a firearm by an alien and felon in

23       possession of a firearm.  So, going through that process,

24       he had more than the normal education the normal citizen

25       would get about possessing and when not to possess

1        firearms.

2              THE COURT:  Okay, let me do this.  Let me take one

3        minute.  I want to take a look at one thing.  So let's go

4        off the record.  I'll be right back.

5              (Recess)

6              THE COURT:  Let's go back on the record.  Thank you

7        very much for your patience.  (indiscernible) the

8        government's request that Mr. Gonzalez be held in custody

9        pending trial of this case.  I appreciate the presentation

10       of evidence and arguments here today.

11             Obviously, the government is seeking detention on two

12       reasons: first, risk of flight; second, danger to the

13       community.  Just upfront, I think that Ms. Hughes' proffer

14       is sufficient to overcome the presumption.  This is a

15       presumption case.  The question is, has the government met

16       its burden?

17             On the flight issue, the government, by preponderance

18       of the evidence, there is no condition or combination of

19       conditions that would deal with the flight issues.  I just

20       -- he's a US citizen.  He's been here since he was a

21       child.  He's got virtually all his loved ones are here in

22       Houston.  Yes, he faces a significant time if convicted,

23       but I think there are conditions that I could impose.  And

24       I do not think the government has met its burden on risk

25       of flight.

1          I think this case turns on whether or not Mr.

2    Gonzalez is a danger to the community.  In all candor, I

3    think this is a close call.

4          On one hand, obviously, he's found with two firearms

5    in his residence that he should not have.  He should have

6    known he should not have them and obviously, with the

7    underlying drug conspiracy and possession charges.

8          At the same time, you know, he is innocent until

9    proven guilty and he was not a threat -- not a threat --

10   or allegation that he used the weapon or that the weapons

11   were involved in the commission of an alleged crime.

12         At the end of the day on this one, although it is

13   close, I think that there are conditions that I can impose

14   to alleviate any danger to the community, pretty strict

15   requirements.  So I'm going to allow the Defendant to be

16   released, but I am going to impose onerous requirements on

17   him.

18         Let me ask from Pretrial.  Have you talked to the

19   younger Gonzalez, Jr., who I understand is in the court?

20   I'm curious would he qualify as a third-party custodian?

21         MS. DELGADO:  Your Honor, Sabrina Delgado with

22   Pretrial Services.  From what I was relayed, he does have

23   prior criminal history, so he would not qualify with our

24   requirements.

25         MS. HUGHES:  And, Your Honor, I can speak to that

1    because I spoke with the Pretrial Services Officer who was

2    in the courtroom.  Like I mentioned, he has a deferred

3    adjudication from 2013 for possession of marijuana and he

4    has a dismissed DWI -- yeah, a dismissed DWI charge from

5    2022.

6            THE COURT:  Okay.  So I could -- I mean I guess he

7    wouldn't technically meet the standard that usually

8    Pretrial does, but I could appoint him as a third-party

9    custodian.

10           MS. HUGHES:  Yes, Your Honor.

11           THE COURT:  Okay.  I mean, could you have the younger

12   Gonzalez come forward to the microphone?  I'd like to chat

13   with him for a second.

14           THE COURT:  Hello, sir.

15           MR. GONZALEZ, JR.:  How are you doing?

16           THE COURT:  Your full name is Jose --

17           MR. GONZALEZ, JR.:  Angel Gonzalez, Jr.

18           THE COURT:  Okay.  And what is your address, sir?

19           MR. GONZALEZ, JR.:  11327 Blackhawk Drive, Houston,

20   Texas 77089.

21           THE COURT:  Okay.  And your phone number, sir?

22           MR. GONZALEZ, JR.:  832-537-1533.

23           THE COURT:  I'm sorry, I can't write that fast.  832

24   --

25           MR. GONZALEZ, JR.:  537-1533.

1           THE COURT:  Okay.  Here's what I'm going to do, sir.

2       I'm going to go over in a second with your father the

3       conditions that I'm going to order on release.  But one of

4       the things I'm going to do is I'm going to have him live

5       with you at your house.  I understand that's okay,

6       correct?

7           MR. GONZALEZ, JR.:  Yes, sir.

8           THE COURT:  What I'm going to order is that he has to

9       stay there basically all the time unless he has medical

10      care, unless he has to go to work, or unless he has to go

11      to court appearances.  Would there be any problem with

12      that?

13          MR. GONZALEZ, JR.:  No, sir.

14          THE COURT:  Okay.  The other thing is I'm going to

15      make you the third-party custodian, which means it's going

16      to be your responsibility to make sure that he complies

17      with these obligations.  And I know, you know, I don't

18      want, you don't want, no one wants your dad to be in

19      custody pending the trial this case.  And as a result, if

20      you are aware that he has violated any of these

21      conditions, it's going to be your responsibility to notify

22      Pretrial Services.  Do you understand that?

23          MR. GONZALEZ, JR.:  Yes, sir, she did tell me that.

24          THE COURT:  Okay.  And the other thing is I want to

25      make sure that, you know, you'll be responsible for making

1    sure that he attends all court appearances as needed and

2    as required.  Understood?

3         MR. GONZALEZ:  Yes, sir.

4         THE COURT:  Okay.  Any questions for me?

5         MR. GONZALEZ, JR.:  No.

6         THE COURT:  Okay.  Thank you very much.  If you would

7    have a seat, we'll get you to sign some paperwork in a few

8    moments.  Mr. Gonzalez, Sr. --

9         MR. GONZALEZ, SR.:  Yes, sir.

10        THE COURT:  Senior, here's what I'm going to do.  I'm

11   going to allow you to be released --

12        MR. GONZALEZ, SR.:  Yes, sir.

13        THE COURT:  -- however, with the following

14   conditions, okay?  If you violate any of these conditions,

15   no matter how minute, I fully expect the government to be

16   back in here asking you be held in custody, and make no

17   mistake, I'm giving you a chance now.  If you violate any

18   of these conditions, you should fully expect to be in

19   custody pending trial of this case.  Do you understand

20   that, sir?

21        MR. GONZALEZ, SR.: Yes, sir.

22        THE COURT:  Any questions for me before we begin?

23        MS. HUGHES:  One moment, Your Honor, he's asking me a

24   question.  Just one second.

25        THE COURT:  Okay.

1          MR. GONZALEZ, SR.:  No, everything's fine, sir.

2          THE COURT:  Okay.  Here are the conditions.  And

3     please listen to these closely.  At the end, I'm going to

4     ask you if you understand them.  If you do, let me know.

5     If you have any questions, obviously, let me know.

6          Okay.  First of all, you must not violate any

7     federal, state, or local law while on release.  You must

8     not intimidate, attempt to intimidate a witness or

9     obstruct justice.  You have to appear in court as

10     required, surrender to serve any sentence.  I'm going to

11     order that you sign a $50,000 unsecured bond, which means

12     in the event if you violate any of these conditions,

13     you'll be responsible for paying up to $50,000.

14          I'm going to have you placed in the custody of your

15     son, which means that you will be required to live at

16     11327 Blackhawk Drive.

17          In addition, you're going to have to report to

18     Pretrial Services.  Someone from that office will be in

19     touch with you.  You are required to maintain or actively

20     seek full-time, verifiable employment.

21          One second.  If you have a passport, you need to

22     surrender that immediately to Pretrial Services.  You may

23     obtain no further passport at all.  You are going to be

24     limited to travel -- I should have asked.  7709 is Harris

25     County, correct?

1           MS. HUGHES:  Yes, Your Honor.

2           THE COURT:  Okay.  We're going to be limited to --

3       was there any reason he would need to go beyond Harris

4       County?

5           MS. HUGHES:  No, Your Honor.

6           THE COURT:  Harris County is as far as you can go

7       with some more restrictions I'll talk about in a second.

8       You are to avoid all contact, directly or indirectly, with

9       any person who is or may become a victim or potential

10      witness.  That includes any of the roughly 40 codefendants

11      in this case.

12          You are to refrain from possessing a firearm,

13      destructive device, or other dangerous weapons.  And I

14      know your son, you know, make sure there's no weapons in

15      the home at all.  No possession of a firearm.

16          You may not have excessive use of alcohol.  You have

17      to refrain from the use or unlawful possession of a

18      narcotic drug or other controlled substance unless

19      prescribed by a doctor.  You're required to submit to any

20      testing required by Pretrial Services to determine whether

21      you're using a prohibited substance.

22          In addition, I'm going to have an ankle monitor put

23      on you.  To the extent you can afford it, you will be

24      required to pay any of the cost to that.  And I'm going to

25      have you limited to home detention, which specifically

1    means that you'll be restricted to that house as one -- or

2    the residence of 11327 Blackhawk Drive at all times,

3    except for employment, education, medical, substance

4    abuse, mental health treatment, court appearances or

5    attorney visits or any other thing that is pre-approved --

6    and I emphasize pre-approved -- by Pretrial Services.

7         Also, you need to immediately report any contact you

8    have with law enforcement to Pretrial Services.  In other

9    words, if you're in a car and you get pulled over, you

10   might not do anything wrong, just make sure Pretrial

11   Services hears from you, not from law enforcement that

12   you've had any contact with law enforcement.  Before I go

13   any further, sir, do you understand those conditions as I

14   have explained?

15        MR. GONZALEZ, SR.:  Yes, sir.

16        THE COURT:  Okay.  Anything else from Pretrial, the

17   government or the Defendant that you believe should be

18   added or subtracted?

19        MR. CUSICK:  Your Honor, concerning the employment,

20   you said the exceptions.  You listed the exceptions.

21   Otherwise, he's detained at the address you listed.  As

22   far as these jobs go, as an Uber driver, Union carpenter,

23   or a game attendant, Pasadena, Texas, game room attendant,

24   are there hours restrictions on when he can perform those

25   employments such as 8 to 5?  Because the government would

1    be opposed to him being an Uber driver 24 hours a day.

2         THE COURT:  Yes, that's an excellent point.  Ms.

3    Hughes, what's your thoughts on that?

4         MS. HUGHES:  Your Honor, we're not opposed to

5    reasonable restrictions.  Maybe being in the house from 7

6    p.m. to 7 a.m. would be reasonable.

7         THE COURT:  Okay.  Here's the additional condition

8    that I'm going to impose.  I'm going to write -- Mr.

9    Cusick makes a good point.  You work as a carpenter, a

10   Uber driver.  So I'm just going to say no employment

11   between 7 p.m. and 7 a.m. daily.

12        In other words, if you are, in fact, working as an

13   Uber driver, you can do it, but it can't be after 7 p.m.

14   or before 7 a.m.  And if you're not working as an Uber

15   driver, you cannot be out of the residence unless

16   obviously for medical, court appearances, or something

17   like that.  Understand, sir?

18        MR. GONZALEZ, SR.:  Yes, sir.

19        THE COURT:  Mr. Cusick, does that resolve that issue?

20        MR. CUSICK:  Yes, sir.

21        THE COURT:  Pretrial Services, please.

22        MS. DELGADO:  Yes, Your Honor.  So just to clarify,

23   and I apologize if I missed it, but did we order report

24   contact with law enforcement?

25        THE COURT:  Yes, we did it.  Or I did.

1          MS. DELGADO:  Okay.  I think that was it, Your Honor.

2     Thank you.

3          THE COURT:  Okay, thank you very much.  Okay.  Let me

4     say this, Mr. Gonzalez, if you have any questions about

5     what you can or can't do, please reach out to Pretrial

6     Services, reach out to your lawyer.  You got a great

7     lawyer.  Don't come back later if there's any violation

8     and say, oh, I didn't realize it.

9          Don't ask for forgiveness afterwards.  Make sure you

10    know what you can and can't do ahead of time.  I will

11    issue these conditions in a written order that your lawyer

12    can give to you.  Please review that carefully.

13    Understand, sir?

14         MR. GONZALEZ, SR.:  Yes, sir.

15         THE COURT:  Okay, I will issue -- when I'm finished

16    this paperwork, I will provide it to my case manager.  We

17    will get this signed.  And as I say, if you violate these

18    conditions one iota, you should fully expect to be held in

19    custody.  And I thank your son.  And Mr. Gonzalez, Jr.,

20    obviously, make sure your dad complies with these

21    obligations.  Okay.  Anything else we need to address

22    today?

23         MR. CUSICK:  Not from the government, Your Honor.

24         MS. HUGHES:  No, Your Honor.

25         THE COURT:  Okay.  Thank you all very much.  I'll get

1    this paperwork completed.  Everyone have a great day and

2    we're off the record.

3            (Hearing adjourned at 3:32 PM)

4                        * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                            RULINGS

4                                          Page        Line

5    Detention                              17           7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 4, 2024